```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK            x
BOCCARDI CAPITAL SYSTEMS, INC.,          :
                                         :   MEMORANDUM DECISION
                              Plaintiff, :        AND ORDER
           - against -                   :        05 cv 6882
                                         :
D.E. SHAW LAMINAR PORTFOLIOS, L.L.C.,    :
                              Defendant. :
                                         x
```

GEORGE B. DANIELS, United States District Judge:

Plaintiff Boccardi Capital Systems, Inc. ("Boccardi") brings this action for damages, the imposition of a constructive trust, and an accounting for alleged breaches of a confidentiality agreement and fiduciary obligations owed by defendant D.E. Shaw Laminar Portfolios, L.L.C. ("D.E. Shaw") in connection with a contemplated acquisition of a Las Vegas casino. Defendant moves to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant's motion to dismiss is granted.

### FACTUAL ALLEGATIONS

Plaintiff Boccardi is a Nevada corporation in the business of financing and acquiring investment properties. Compl. ¶ 6. In 2002, plaintiff made an unsuccessful attempt to acquire a controlling interest in Riviera Holding Corporation ("Riviera"), the public company which then owned the Riviera Hotel in Las Vegas, Nevada. Id. After those unsuccessful efforts, plaintiff contacted defendant D. E. Shaw, a hedge fund incorporated in the state of Delaware and

-1-

operating in New York, to determine whether defendant had an interest in jointly acquiring control of Riviera.  Id. at ¶¶ 2, 10.

The parties engaged in "preliminary discussions" concerning "a possible financial investment" in Riviera.  See Affidavit of Lara E. Romansic dated January 20, 2006, Exhibit A ("Conf. Agmt.") at 1.  However, the only agreement that Boccardi and D. E. Shaw reached with regard to the contemplated transaction was a written Confidentiality Agreement and Use Restriction contract (the "Confidentiality Agreement") effective October 20, 2003.  Id.  The Confidentiality Agreement outlined the terms under which plaintiff would disclose sensitive information to defendant as part of a process that the parties hoped would culminate in their joint acquisition of Riviera.  Boccardi agreed to provide information on "the location/name of Boccardi's current target, intellectual property rights, copyrights, trademarks, trade secrets, know-how, designs, specifications, plans and other financial and business materials and data related to Boccardi or the Development."[1]  Id.  However, the Confidentiality Agreement expressly excluded from its use restrictions:

> information that (a) is or becomes generally available to the public other than as a result of a disclosure by D.E. Shaw ... in breach of [the] Agreement (b) was available to D.E. Shaw prior to its disclosure by Boccardi or any other Boccardi representatives, or (c) becomes available to D. E. Shaw on a non-confidential basis from a person other than Boccardi ... who is not known by D.E. Shaw to be otherwise bound by a confidentiality or comparable agreement with Boccardi to any of Boccardi's representatives or to be otherwise prohibited from transmitting the information to D. E. Shaw.  Id. at 1.

Boccardi agreed to provide such information "solely" for "D.E. Shaw's and Boccardi's

---

[1] The contract defined "Development" as "the possibility of the development or acquisition of a hotel, casino and/or resort project in Las Vegas, Nevada."  Conf. Agmt. at 1.

consideration of the 'Investment.'" Id. at 1-2.[2]  D. E. Shaw agreed to protect the confidential information and agreed to not to use the confidential information: (i) "for any purpose other than in connection with their consideration of the Investment and D.E. Shaw's prospective association with Boccardi"; (ii) "for purposes of placing a bid or negotiating a transaction for the purchase of any securities or assets of the company that is the target of the Development"; and (iii) "in connection with any other involvement other than the contemplated Investment with Boccardi." See Conf. Agmt. at 2.  Defendant could not "use such information without plaintiff's consent or in competition with or to the detriment of plaintiff." Compl. ¶ 5.

The Confidentiality Agreement did not set forth the terms of the proposed joint venture that the parties' hoped to complete, nor did it impose any specific obligations upon either party in the event of a failed acquisition of Riviera.  Rather, the Confidentiality Agreement reflected the parties' understanding that defendant might decline to pursue the transaction, and that the parties had not reached a final agreement on the terms governing defendant's participation in the contemplated acquisition.  It provided for the return or destruction of confidential information exchanged between Boccardi and D. E. Shaw in the event that they did not proceed with the joint acquisition.  See Conf. Agmt. at 2 ("If D.E. Shaw determines that it does not wish to proceed with its consideration of the Investment" it must "promptly advise Boccardi of that decision"); id. at 2-3 ("[I]n the event that D. E. Shaw and Boccardi are unable to work out a mutually satisfactory retention agreement between them, D. E. Shaw will, upon Boccardi's request, promptly deliver to Boccardi, or confirm to Boccardi in writing that D. E. Shaw has destroyed,

---

[2] The contract defined "Investment" as "a possible financial investment by D.E. Shaw in the Development." Conf. Agmt. at 1.

all of the Boccardi Information, including all copies ..." of confidential material).

In furtherance of their plan, plaintiff introduced defendant to a "wealthy business associate who was a significant potential investor in the Riviera opportunity and who had agreed to participate with [plaintiff] in [plaintiff's] efforts to acquire control of Riviera." Compl. ¶¶ 11-4. During the course of the parties' negotiations, however, that investor abandoned the project. Plaintiff was then left "without sufficient funds to participate in the acquisition." Id. at ¶ 20.

On March 28, 2004, defendant purchased "approximately 358,000 shares of Riviera stock" with its own funds. Plaintiff alleges that it was incapable of contributing to that purchase. Compl. ¶¶ 22-3. Plaintiff consented to defendant's purchases of Riviera shares in the hope that the parties could still accomplish a joint takeover. Though plaintiff asserts that the parties "negotiated the terms of [an] option arrangement and ultimately agreed that D. E. Shaw would give plaintiff an option to purchase up to 50% of the D. E. Shaw Riviera stock," plaintiff concedes that such negotiations did not culminate in the execution of an enforceable option agreement. Id. at ¶¶ 22, 26; Pl. Opp. Mem. at 21 n. 5 (Boccardi "does not claim an enforceable option agreement").

Boccardi alleges that in the month after defendant's purchase of Riviera securities, plaintiff consented to D. E. Shaw discussing its interest in acquiring the Riviera with Riviera's management, and plaintiff also "continued discussing ways and means of acquiring control" with D.E. Shaw. Compl. ¶¶ 25, 28. However, plaintiff maintains that "abruptly" in May 2004, "D. E. Shaw purported to cancel all discussions with plaintiff and thereafter refused to provide plaintiff with opportunities to purchase any portion of the Riviera stock." Compl. ¶ 29. On August 20, 2004, defendant made its own public bid to obtain a controlling interest in Riviera. Id. at ¶ 31.

Boccardi did not participate in or make any financial contributions towards D. E. Shaw's public bid.

Defendant did not ultimately acquire a controlling interest in Riviera. Compl. ¶ 32. In May 2005, more than one year after D. E. Shaw's abortive acquisition attempt, defendant sold 350,000 of its more than 485,000 Riviera shares. Through that sale, defendant realized "a profit in excess of $19,000,000." Id. at ¶¶ 24, 35.

## PLAINTIFF'S CLAIMS

Plaintiff claims that defendant breached the Confidentiality Agreement by using confidential information to independently make a public bid for control of Riviera and by failing to grant plaintiff either an option to purchase or a proxy to vote D. E. Shaw's Riviera shares. Plaintiff also claims that it entered into a confidential relationship with defendant and that defendant's actions with respect to the Riviera acquisition constituted a breach of its fiduciary obligations to plaintiff. Plaintiff further asks this Court to impose a constructive trust and, under a theory of unjust enrichment, to order an accounting of D.E. Shaw's Riviera stock and the profits defendant earned from its sale of Riviera shares in 2005. Plaintiff, however, does not contend that it had an enforceable contract with defendant for a joint takeover of Riviera or an enforceable option agreement for the purchase of D. E. Shaw's Riviera shares.

Under the Federal Rules of Civil Procedure, a claimant must only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In assessing the sufficiency of plaintiff's complaint under Rule 12(b)(6), this Court must "draw all inferences in the light most favorable to the non-moving party." In re NYSE Specialists Securities Litigation, 503 F.3d 89, 95 (2d Cir. 2007) (citing Port Wash v. Teachers' Assn. v. Port

Wash. Union Free Sch. Dist., 478 F3d 494, 498 (2d Cir. 2007)).  This Court may properly consider documents, such as the Confidentiality Agreement, which are incorporated by reference into the complaint.  See Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989).  The complaint should only be dismissed for failure to state a claim when this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief."  Id.

Although the pleading requirements are construed liberally, "[l]iberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists upon which relief could be accorded the pleader.  If it fails to do so, a motion under Rule 12(b)(6) will be granted."  Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc., 10 F. Supp.2d 334, 344 (S.D.N.Y. 1998) (quoting 2 Moore's Federal Practice § 12.34[1][b] at 12-60 (3d ed.)).  Thus, this Court must only accord the presumption of truth to "well-plead factual allegations"; in contrast, mere "bald assertions" are insufficient to defeat a motion to dismiss.  See Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).  A cause of action for breach of contract composed entirely of "conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."  De Jesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 70 (2d Cir. 1996).

### I.  Breach of the Confidentiality Agreement

Plaintiff seeks damages in the amount of $68,000,000 for defendant's alleged violations of "its Confidentiality and Use Restriction Agreement and its covenant of good faith and fair dealing with plaintiff."  Compl. ¶¶ 38, 40.  To state a cause of action for breach of the Confidentiality Agreement, plaintiff must specify "the terms of the agreement, the consideration, the performance by plaintiff[], and the basis of the alleged breach of the agreement by

defendant." Furia v. Furia, 116 A.D.2d 694, 695, 498 N.Y.S.2d 12, 13 (N.Y. App. Div. 1986); see also Morris v. 702 East Fifth Street HDFC, 46 A.D.3d 478, 479, 850 N.Y.S.2d 6, 7 (N.Y. App. Div. 2007).

Paragraph 11 of the complaint describes various types of information provided by Boccardi's President to D. E. Shaw, including information concerning his "prior contacts with Riviera, [] his knowledge of the identities of holders of blocks of Riviera stock" as well as his research and analysis of Riviera and the casino industry. The categories outlined in paragraph 11 of the complaint are broad and potentially encompass both confidential information and information expressly excluded from the Confidentiality Agreement. Compl. ¶ 38. Yet, in setting forth its cause of action for breach of the Confidentiality Agreement, plaintiff only alleges that defendant used "information provided by plaintiff as set forth in paragraph 11" in violation of the Confidentiality Agreement. Boccardi fails to identify any facts or categories of confidential information that defendant used in contravention of that agreement.

Moreover, plaintiff alleges that defendant breached the Confidentiality Agreement by using unspecified confidential information competitively and to plaintiff's detriment "for purposes of purchasing substantial blocks of stock in Riviera." Id. at ¶ 38. Plaintiff has not, however, alleged that defendant's purchase of Riviera stock constituted a misuse of confidential material in violation of the Confidentiality Agreement. On the contrary, plaintiff alleges that "[t]he parties agreed, as proposed by Boccardi, that in pursuance of this goal [to acquire Riviera], it would be beneficial to acquire blocks of Riviera stock totaling just under 10% of the total outstanding." Id. at ¶ 16. Plaintiff further alleges that Boccardi was unable to help finance the stock purchase and that plaintiff consented to D. E. Shaw's purchase of Riveria securities. See

Id. at ¶¶ 20, 21; see also Pl. Opp. Memo. at 5 ("plaintiff did not object or institute legal action to restrain D. E. Shaw from purchasing securities of Riviera").  Therefore, D. E. Shaw's purchase of Riviera securities, made with plaintiff's consent, was consistent with the parties' efforts to negotiate a joint acquisition.  In the absence of allegations showing misuse of confidential information for a prohibited purchase, plaintiff has not alleged a cause of action for breach of the Confidentiality Agreement.

Plaintiff's further contention that D. E. Shaw violated the Confidentiality Agreement by "failing to give plaintiff an option to participate and proxy to vote defendant's share" (Compl. ¶ 38) is not a sufficient factual allegation to support a cause of action for breach of the Confidentiality Agreement.  An option contract constitutes "an agreement to hold an offer open; it confers upon the optionee, for a consideration paid, the right to purchase at a later date." Kaplan v. Lippman, 75 N.Y.2d 320, 324-25, 552 N.Y.S.2d 903, 904 (N.Y. 1990) (internal citations omitted).  While plaintiff generically pleads that an "option arrangement" was negotiated by the parties (see Compl. ¶ 22), it does not allege the terms of a contract with the requisite specificity to demonstrate that an actual agreement was ever reached.  In fact, plaintiff does not even claim or sue for breach of an enforceable option contract.  On the contrary, plaintiff specifically admits that it "does not claim an enforceable option agreement."  Pl. Opp. Mem. at 21 n. 5.   Plaintiff concedes that the parties never reached a final agreement on an option contract (see Compl. ¶ 24 ("Before the parties could reach final agreement on all of the precise terms of the option, D. E. Shaw, with the assistance and advice of Boccardi ... purchased approximately 128,000 shares of Riviera..."); ¶ 25 ("the parties continued discussing ways and means of acquiring control"); ¶ 26 ("Despite continued promises by D.E. Shaw" and "repeated

demands by Boccardi to formalize the agreements ... D. E. Shaw failed to execute the agreement as promised")).  What plaintiff describes is merely an unenforceable agreement-to-agree which plaintiff concedes is unenforceable.  See Martin v. Schumacher, 52 N.Y.2d 105, 109-10, 436 N.Y.S.2d 247, 249 (N.Y. 1981) ("a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable").

      Plaintiff fails to identify any provision of the Confidentiality Agreement which imposed an obligation on D. E. Shaw to execute an option contract.  Accordingly, defendant's failure "to give plaintiff an option" to purchase any of defendant's shares cannot constitute a breach of the Confidentiality Agreement, the only contractual agreement reached by the parties.

      Finally, plaintiff contends that D. E. Shaw breached the Confidentiality Agreement by "publically announcing a bid for Riviera stock" and negotiating a transaction for purchasing Riviera securities.  Compl. ¶ 38.  However, the factual allegations in the complaint do not support those contentions.  Plaintiff had discussions with defendant regarding meetings which, with plaintiff's consent, D. E. Shaw conducted with Riviera's management.  Id. ¶ 28.  Plaintiff further alleges that it continued "to work together" with defendant while defendant negotiated its acquisition attempt in the hope that plaintiff would have an option to purchase D. E. Shaw's Riviera shares in the event of a successful takeover.  Id.  Accordingly, plaintiff does not allege that D. E. Shaw's negotiations, standing alone, were inconsistent with the Confidentiality Agreement.  Moreover, plaintiff's allegations fail to identify any confidential information that D. E. Shaw misused in conducting its negotiations, or that defendant relied upon in making its failed bid for control of Riviera.  Therefore, plaintiff's cause of action for breach of the Confidentiality Agreement is legally insufficient since it lacks facts showing the basis upon which liability is

factually predicated.  See Sud v. Sud, 211 A.D.2d 423, 424, 621 N.Y.S.2d 37, 38 (N.Y. App. Div. 1995).

Even if plaintiff had sufficiently alleged that D. E. Shaw misused confidential information in its negotiation and/or public bid for control of Riviera, plaintiff has failed to allege that Boccardi suffered compensable damages as a result of such a contractual breach.  Damages for breach of contract are intended to "give the injured party the benefit of the bargain by awarding a sum of money that will ... put that party in as good a position as it would have been in had the contract been performed."  Goodstein Construction Corp. v. City of New York, 80 N.Y.2d 366, 372, 590 N.Y.S.2d 425, 428 (N.Y. 1992) (citation omitted).  "Without a clear demonstration of damages, there can be no claim for breach of the contract."  Milan Music, Inc. V. Emmel Comm. Booking, Inc., 2007 N.Y. Slip Op. 01166, at * 1, 829 N.Y.S.2d 485, 486 (N.Y. App. Div. 2007).

Plaintiff's pleadings demonstrate that Boccardi made no financial contributions to D. E. Shaw's purchases of Riviera stock, and that Boccardi expended no funds in connection with the parties' failed negotiations.  See, e.g., Compl. ¶¶ 20, 21, 27, 33.  Plaintiff merely states, in conclusory fashion, "Boccardi could have and would have acquired blocks of securities, and would have and could have successfully negotiated a transaction to acquire control of Riviera," if D.E. Shaw had not breached the Confidentiality Agreement.  Id. at ¶ 39.  However, New York law does not permit recovery for "hypothesized successful completion of proposed" transactions.  See Goodstein, 80 N.Y.2d at 430, 80 N.Y.2d at 373.  Plaintiff's speculative optimism, concerning what "could have and would have" happened, cannot substitute for facts evincing direct causation and actual damages.

In essence, what plaintiff seeks, in reliance on the Confidentiality Agreement, are rights to claim an ownership interest in a portion of D. E. Shaw's purchased stock, and to extract a portion of defendant's profits from the sale of that stock. However, no provision of the Confidentiality Agreement, or any other enforceable contract, imposed an obligation on D. E. Shaw to share its stock, or earnings therefrom, with Boccardi. Plaintiff cannot create such obligations under the guise of recovering damages for misuse of confidential information. The stock purchased by defendant with plaintiff's consent belonged to D. E. Shaw. Plaintiff admits that it had no enforceable option contract requiring that plaintiff be allowed to purchase a portion of those shares or to obtain any profits from their sale.[3]

## II.   Existence of a Fiduciary Relationship

In its second cause of action, plaintiff seeks $68,000,000 in damages and $50,000,000 in punitive damages as compensation for defendant's alleged breach of fiduciary duty in its capacity as plaintiff's "underwriter, investment banker and financier." Compl. ¶¶ 41-6. "A fiduciary relationship arises where one person is under a duty to act for or to give advice for the benefit of another within the scope of the relation." Levitin v. Painewebber, Inc., 159 F.3d 698, 707 (2d Cir. 1998) (internal citation and quotations omitted). A fiduciary relationship may be found to exist in the absence of a written agreement. See, e.g., Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc., 186 F.3d 157, 169 (2d Cir. 1999) (a fiduciary relationship may exist when "corporate information is revealed legitimately to an underwriter, accountant, lawyer, or

---

[3] Plaintiff's claim that defendant breached the covenant of good faith and fair dealing inherent in the Confidentiality Agreement is also without merit. That covenant cannot be interpreted to create independent contractual rights not bargained for by the parties to an agreement. See Consolidated Edison, Inc. v. Northeast Utilities, 426 F.3d 524, 529 (2d Cir. 2005) (citing Fesseha v. TD Waterhouse Investor Servs., 305 A.D.2d 268, 761 N.Y.S.2d 22, 23 (N.Y. App. Div. 2003)).

consultant working for the corporation" with the expectation that "the outsider [will] keep the disclosed nonpublic information confidential," and where the relationship between the parties implies the existence of fiduciary obligations).  However, dismissal of a breach of fiduciary duty claim is appropriate where plaintiff's factual allegations demonstrate nothing more than "an ordinary commercial relationship" between the parties.  See Mid-Island Hosp., Inc. v. Empire Blue Cross and Blue Shield, 276 F.3d 123, 130 (2d Cir. 2002) (citing Pan Am. Corp. v. Delta Airlines, Inc., 175 B.R. 438, 511 (S.D.N.Y. 1994)).

      In this action, plaintiff claims that it entered into a "confidential relationship" with D. E. Shaw and that because "D. E. Shaw agreed to act and acted in the capacity of underwriter, investment banker and financier," defendant "owed a fiduciary duty to plaintiff."  Compl. ¶ 42; see also id. at 15 ("D. E. Shaw agreed to act as underwriter/investment banker and to provide financing and consulting services to Boccardi").  However, plaintiff's factual allegations clearly demonstrate that D. E. Shaw never agreed to finance Boccardi's acquisition of Riviera.  Plaintiff alleges that it attempted to obtain financing through its own investor, not through D. E. Shaw.  Id. at 20.  When that investor abandoned the project, plaintiff hoped to "obtain substitute funding" and did not rely on D. E. Shaw to provide financing.  Id. at 21.  Plaintiff further alleges that while attempting to negotiate an option agreement with defendant, D. E. Shaw encouraged Boccardi to "arrange financing on your [Boccardi's] end with a satisfactory partner."  Id. at 21.  Nothing in the complaint supports plaintiff's contention that D. E. Shaw agreed to finance or underwrite Boccardi's acquisition of Riviera. The facts presented in the complaint point to the parties' efforts to negotiate a joint undertaking, not an engagement in which D. E. Shaw assumed an obligation to act on Boccardi's behalf.

Plaintiff's allegations demonstrate that the Confidentiality Agreement was executed by parties on equal footing, as part of a "purely commercial relationship," one in which courts will not impose fiduciary obligations on either contracting party. See Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing, Co., 33 A.D.2d 766, 766, 306 N.Y.S.2d 599, 600 (N.Y. App. Div. 1969), aff'd, 30 N.Y.2d 34, 30 N.Y.S.2d 329 (N.Y. 1972).  In these ongoing arms length negotiations, plaintiff has alleged no facts to demonstrate the existence of a fiduciary relationship between Boccardi and D. E. Shaw.  The second cause of action for breach of fiduciary duty is, thus, insufficient as a matter of law.

Furthermore, as the assertion of a fiduciary relationship in this case is a predicate to the imposition of a constructive trust, that claim must also fail.  See In re First Central Financial Corporation, 377 F.3d 209, 212 (2d Cir. 2004) (constructive trust requires fiduciary relationship, a promise, transfer made in reliance thereon, and unjust enrichment) (internal quotations omitted); Bankers Security Life Insurance Society v. Shakerdge, 49 N.Y.2d 939, 940, 428 N.Y.S.2d 623, 624 (N.Y. 1980) (same).

### III.   Unjust Enrichment

Plaintiff separately asserts a cause of action for unjust enrichment, contending that defendant received a benefit in the form of "invaluable confidential information."  Compl. ¶ 51. Defendant, on the other hand, maintains that this cause of action is precluded by the existence of a written Confidentiality Agreement, since plaintiff provided all of the allegedly confidential information to D. E. Shaw pursuant to that contract.

 A plaintiff may assert a cause of action under a theory of unjust enrichment to "create an obligation in the absence of an agreement." Goldman v. Metro. Life Ins. Co., 5 N.Y.3d 561, 571,

807 N.Y.S.2d 583, 587 (N.Y. 2005).  Consequently, "the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery of an unjust enrichment claim."  Clark Fitzpatrick, Inc. v. Long Island Railroad Company, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 656 (N.Y. 1987).

Plaintiff alleges that it provided confidential information pursuant to a written contract which it contends defines the parties' obligations.  See Compl. ¶ 11 ("In reliance on the confidentiality and use restriction agreement, Boccardi, though its President, Fabrizio Boccardi, imparted confidential information to D. E. Shaw...").  Plaintiff provided confidential information pursuant to the Confidentiality Agreement.  The existence of that valid and enforceable written contract precludes plaintiff from asserting an equitable cause of action for unjust enrichment based on the misuse of those disclosures.

Even if the Confidentiality Agreement did not prevent plaintiff from asserting a separate unjust enrichment claim, the facts alleged in the complaint provide no support for a finding that plaintiff is entitled to restitution for any unjust enrichment obtained by D. E. Shaw.  New York law requires a plaintiff to "establish 1) that the defendant benefitted; 2) at plaintiff's expense; and 3) that equity and good conscious require restitution," in order to prevail on a claim for unjust enrichment.  See Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000).  A claim for unjust enrichment will be dismissed where a plaintiff fails to allege that a benefit was conferred on defendant "for which plaintiffs should have been compensated or to which plaintiffs were entitled."  See Wiener v. Lazard Freres & Co., 241 A.D.2d 114, 121, 672 N.Y.S.2d 8, 13 (N.Y. App. Div. 1998).

Plaintiff alleges that defendant "has been unjustly enriched by accepting the benefits of

plaintiff's contributions and forbearance." Compl. ¶ 51. Yet, plaintiff fails to define its "contributions and forbearance." The complaint is devoid of allegations showing that plaintiff suffered any identifiable losses or that plaintiff provided any money, property or services to defendant for which, in equity, plaintiff should receive restitution. Plaintiff's claim is premised solely on its attempt to seek a portion of the profits defendant made when defendant sold its shares in Riviera. In support of its unjust enrichment claim, plaintiff proffers no set of facts that would entitle it to profit from the purchase and sale of stock to which plaintiff did not financially contribute. Because plaintiff has articulated no benefit D. E. Shaw obtained at Boccardi's expense, plaintiff's cause of action for unjust enrichment is insufficient as a matter of law.

Defendant's motion to dismiss plaintiff's complaint is GRANTED.

Dated: New York, New York
February 9, 2009

SO ORDERED:

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge